UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEITH FERNANDEZ, *Pro Se*
600 NE 27th Street, Unit 2104
Miami, FL 33137,

*Plaintiff,*

CASE NO: 25 CV 05982

REFILED COMPLAINT

vs.

KKR & CO. INC., *Company,*
30 Hudson Yards
New York, NY 10001,

ADAM SMITH, *Individually,*
30 Hudson Yards
New York, NY 10001,

DOUG BRODY, *Individually,*
30 Hudson Yards
New York, NY 10001,

KATIE SUDOL, *Individually,*
30 Hudson Yards
New York, NY 10001,

*Defendant(s)*

## COMPLAINT

**COMES NOW,** PLAINTIFF KEITH FERNANDEZ, (hereinafter, "FERNANDEZ"), appearing *Pro Se*, hereby sues DEFENDANTS KKR & CO. INC.; ADAM SMITH; DOUG BRODY and KATIE SUDOL (collectively referred to herein as the "KKR Defendants") for violations of the Civil Federal Racketeer Influenced and Corrupt Organizations Act (RICO), National Origin (Hispanic) Discrimination and Retaliation under Title VII of the Civil Rights Act of 1964, Breach of Fiduciary Duty for failing to cure legal deficiencies putting LP and Shareholder Funds at risk and Intentional & Negligent Emotional Distress. The Defendants also violate New York Consolidated Labor Law - LAB § 704 and Human Rights Law § 296.13 (*Exhibit 1*) for effectively "black-listing" Fernandez, refusing to even provide him with a neutral reference or verify his employment, in retaliation for filing a Discrimination Complaint when he was employed for the firm. After an initial investigation, the EEOC has issued a "Notice of Right to Sue" (*Exhibit 2*), a pre-requisite to file a Federal Claim under Title VII and the ADA. FERNANDEZ alleges as follows:

### A. PARTIES, JURISDICTION & VENUE

1. This is an Action for damages in excess of $10,000,000, exclusive of treble damages, punitive damages, interest, costs and attorney's fees (if applicable) calculated using the Discounted Cash Flow Method based on the monetary past and future losses to his career caused by the KKR Defendant's retaliatory and discriminatory actions damaging his relationships with other Private Equity Firms and Recruiters. The high calculated damages are due to Fernandez's highly distinguished educational achievements, Investment Banking and Private Equity background and in-line with the past earnings of many of his peers.

2. PLAINTIFF KEITH FERNANDEZ is an individual over the age of 18 who is sui juris and resides in Miami-Dade County.

3. DEFENDANT ADAM SMITH is an individual over the age of 18 who is sui juris and resides in New York County, employed by KKR & CO. INC. or one if its' affiliates.

4. DEFENDANT DOUG BRODY is an individual over the age of 18 who is sui juris and resides in New York County, employed by KKR & CO. INC. or one of its' affiliates.

7. DEFENDANT KATIE SUDOL is an individual over the age of 18 who is sui juris and resides in New York County, employed by KKR & CO. INC. or one of its' affiliates.

8. DEFENDANT KKR & CO. INC. is a Corporate Entity.

9. Given Diversity Jurisdiction, the Federal RICO violations and the Federal Discrimination Law invoked, this matter is properly suited for Federal Court.

## B. <u>GENERAL ALLEGATIONS COMMON TO ALL COUNTS</u>

10. FERNANDEZ is a Harvard and Wharton Educated Hispanic-American of Puerto Rican, Spanish and Irish Descent. FERNANDEZ'S father is of 100% Hispanic Descent making FERNANDEZ for all purposes legally part of a "protected National Origin class" as defined by the Federal Government and the U.S. Equal Employment Opportunity Commission ("EEOC").

11. FERNANDEZ received his B.A. from Harvard University in 2010 in Economics with *Cum Laude* Honors. After graduating from Harvard, FERNANDEZ worked at top Wall Street Investment Banks and Private Equity Firms, including Bank of America Merrill Lynch in their Leveraged Finance Group and KKR in their Capital Markets Group. FERNANDEZ received his MBA from Wharton Business School in 2018 in Finance, where he achieved a 3.97

GPA and 6 A+s for the Academic Excellence Fellowship ranking him 2nd in his Class of ~900 students at the time. At all times during this Complaint, FERNANDEZ was highly qualified to perform the duties he was hired for.

12. The KKR Defendants are currently under Federal Investigation for anti-trust violations of the Hart-Scott-Rodino (HSR) Act and have an outstanding Federal Lawsuit (USA vs. KKR & Co. Inc. et. al., *Case No.: 1:25-cv-343)* currently being litigated in the Southern District of New York.

13. In Direct Retaliation for the Federal Government exposing them, KKR proceeded to counter-sue the Department of Justice and Federal Trade Commission, blaming it on political motivation and the Biden Administration. Essentially, Senior Executives at KKR who make hundreds of millions of dollars in annual compensation are suing the American Tax-Payer, putting federal funds and federal jobs at risk, so they can continue to reap exorbitant profits.

14. FERNANDEZ suffers from a Disability. This Disability is fully covered by the Americans with Disabilities Act. He must be provided with reasonable accommodation and can't be discriminated against in employment situations or in Federal Court proceedings. A detailed Forensic Report from a triple Board-Certified Forensic Psychiatrist (MD) licensed in New York is attached certifying his current Competency and adherence to medications. (*see Exhibit 3*). FERNANDEZ has a Constitutional Right under 28 U.S.C. § 1654 to represent himself and has done so in prior lawsuits resulting in successful 6-figure settlements. He does this because of the exorbitant costs of federal attorneys and a strong belief in his education. With this being said, FERNANDEZ has received guidance and advice from Federal Attorneys at Morgan & Morgan free of charge as a favor to his mother, who is a family friend of the Owner.

15. The Forensic Psychiatrist attests to the following in the Conclusion of her Forensic Report:

"Based on this assessment, Mr. Fernandez:

- Understands the nature and purpose of the legal proceedings.
- Is able to appreciate relevant legal and factual issues.
- Can communicate effectively with legal counsel.
- Has the capacity to make informed, rational decisions regarding his case.
- Demonstrates no psychiatric instability that would impair his legal competency at this time."

16. Federal Courts have consistently ruled that a pro se complaint be held to less "stringent standards" and be granted additional flexibility. See *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"); see also *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), *reh'g denied*, 429 U.S. 1066 (1977). The United States Court of Appeals for the Federal Circuit has similarly stated that "the pleadings of pro se litigants should be held to a lesser standard than those drafted by lawyers when determining whether the complaint should be dismissed for failure to state a claim because '[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims.'" *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed. Cir. 2002) (quoting *Hughes v. Rowe*, 449 U.S. 5, 15 (1980)), *cert. denied*, 537 U.S. 823 (2002).

17. Additionally, when deciding on a motion to dismiss, this court must assume that all facts alleged in the complaint are true and must draw all reasonable inferences in the Plaintiff's favor. See *Conley v. Gibson*, 355 U.S. at 45-46; *Boyle v. United States*, 200 F. 3d at 1372; *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998); *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *Highland Falls-Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d at 1667 (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); *Hamlet v. United States*, 873 F.2d at 1416; Ho v. U.S., 49 Fed. Cl. 96, 100 (2001), aff'd, 30 Fed. Appx. 964 (2002); *Alaska v. United States*, 32 Fed. Cl. at 695.

18. FERNANDEZ was employed as an Associate at KKR in their Capital Markets Group.

19. During this time, Defendant DOUG BRODY and James Connolly repeatedly made inappropriate racial comments to FERNANDEZ, including that he was "sweating like a Mexican," "was a dirty illegal Cuban from Miami," "must love tacos" and repeatedly and on numerous occasions called him ethnic sounding names like "Vinny" and "Vincenzo". This is in violation of Title VII of the Civil Rights Act of 1964 and created a Hostile Work Environment that caused FERNANDEZ severe emotional distress and lack of motivation to work.

20. While racially disparaging FERNANDEZ, the Defendants ADAM SMITH and DOUG BRODY as well as James Connolly and George Mueller also began to widely disseminate rumors around the office and to external parties that he was an "Illegal Steroid User," WITH NO LEGAL EVIDENCE AT ALL, because they were jealous of his physique. This is without instructing or asking FERNANDEZ to take a drug test to confirm their suspicion. This again created a Hostile Work Environment and ruined his reputation with investors, ultimately leading to job loss. This is Defamation Per Se, but outside the look-back.

21. While making these disparaging comments, Defendant ADAM SMITH and George Mueller also greatly diminished his role and accomplishments in securing a fee on a Mezzanine PIK Note Syndication of $4.4 million, the 2nd largest fee event in the group that year. This is despite numerous third parties knowing he led most of the syndication efforts and FERNANDEZ showing up to Investment Committee by himself to consummate the deal.

22. To steal and discredit FERNANDEZ's hard-earned fee, ADAM SMITH went so far as to fraudulently book the fee to their European counterpart, despite the entire syndication occurring in the United States and everyone knowing it. After FERNANDEZ raised concerns, they back-tracked and still incorrectly only booked half the fee under the US entity, effectively insinuating potential guilt.

23. FERNANDEZ submitted a Discrimination Complaint internally to HR regarding the racial disparagements, which was formally investigated and resulted in a Formal Apology to FERNANDEZ by the Senior HR Leader and ADAM SMITH, admitting to potential guilt.

24. All the while racially disparaging and defaming FERNANDEZ, the KKR Defendants were arrogant enough to solicit an investment from him of over $190,000 into their Fund, more than his entire year's salary, which his Father lent him the money to do.

25. When KKR solicited FERNANDEZ to take $190,000 from him, they falsely certified him as an "Accredited Investor," a requirement to invest in the Fund. They failed to check his paperwork to confirm he met the requirements, which he did not. This electronic investment solicitation and the associated wire were in direct violation of SEC Securities Regulations.

26. FERNANDEZ left the Firm in 2014 due to the Hostile and Uncomfortable work environment that was created by the KKR DEFENDANTS.

27. Ever since leaving the Firm, the KKR Defendants, including Defendant KATIE SUDOL, have been "black-listing" him to retaliate against the Discrimination Complaint in violation of 18 US Code § 1513 and New York Consolidated Laws, Labor Law - LAB § 704:

*It shall be an unfair labor practice for an employer:*

*1. To spy upon or keep under surveillance, whether directly or through agents or any other person, any activities of employees or their representatives in the exercise of the rights guaranteed by section seven hundred three.*

*2. To prepare, maintain, distribute or circulate any blacklist of individuals for the purpose of preventing any of such individuals from obtaining or retaining employment because of the exercise by such individuals of any of the rights guaranteed by section seven hundred three.*

28. Additionally, according to New York Human Rights Law § 296.13, the boycott or blacklisting provisions of the Human Rights Law make it unlawful to "boycott or blacklist, or to refuse to buy from, sell to or trade with, or otherwise discriminate against any person," because that person, or any of that person's "partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers or customers" have any of the protected characteristics listed in HRL §296.13. (*See Exhibit 1*)

29. In retaliation for the Discrimination Complaint, the black-listing activities by the KKR Defendants, including General Counsel KATIE SUDOL, include completely "ghosting him," refusing to provide a HR contact to verify his employment, continuing to spread malicious rumors about him and refusing to provide any "references" for him at all, effectively barring him from employment at prestigious Private Equity Firms and Hedge Funds.

30. The KKR Defendants are currently "shunning" him and making fun of his Disability, while effectively "black-listing" him from employment opportunities, all of which require verification of his employment and a simple reference acknowledging his contributions.

31. This includes providing him a negative reference at a Third-Party Private Equity Firm in Miami in October 2024 despite his substantial documented contributions to KKR in his resume in direct retaliation for the EEOC Discrimination Complaint. The Private Equity Firm wanted to hire him due to his strong qualifications, but backed out last minute due to the KKR Defendant's behavior.

32. This includes refusing to provide him references or verification of employment to corroborate the facts on his resume and acknowledge his accomplishments at KKR on his resume for opportunities at Third-Party Hedge Funds and Investment Firms in New York or potentially providing him negative references in retaliation for the EEOC Discrimination Complaint. The Hedge Funds and Investment Firms wanted to hire him due to his strong qualifications, but backed out last minute due to the KKR Defendant's behavior.

33. Most recently, in June of 2025, the KKR Defendants interfered, tampered and disseminated his personal emails with his most recent employer, Negligently Inflicting Emotional Distress and creating a Hostile Work Environment causing FERNANDEZ to lose the job opportunity and future earnings with the Recruiting Firm involved. This was all to maliciously retaliate against Fernandez for submitting a Discrimination Complaint 10 years ago and causing near-term tangible earnings losses.

34. Specifically, the KKR Defendants continue to label FERNANDEZ internally and externally as "mentally ill" in violation of the ADA (his disability cannot be formally exposed to potential employers without his consent), a "serious criminal," a "drug user" and a "felon."

35. To call Fernandez a "serious criminal" and a "felon" is Defamation Per Ee and it is affecting his employment opportunities. President Donald Trump is a 30+ Convicted Felon. FERNANDEZ is NOT a Convicted Felon and has never been convicted of a Felony.

36. The New York City Fair Chance Act (FCA), where KKR is headquartered, prohibits employers or past-employers from considering or disclosing "non-conviction information" in employment procurement situations and generally limits reporting to 7 years. The Fair Credit Reporting Act (FCRA) prevents disclosure or background checks by employers without the explicit consent of the applicant. KKR violates both of these laws.

37. FERNANDEZ sent the KKR Defendant's multiple email warnings to stop these actions and requests to disclose inappropriate communication and they completely "ghost him," not even replying to his emails to deny these activities, which is suspicious.

38. FERNANDEZ has tried on multiple occasions to mediate this matter pre-litigation to avoid hurting KKR and its Shareholders and LPs to Defendant Katie Sudol, General Counsel. He has given her adequate chances to cure their legal deficiencies and stop breaking relevant legislation regarding their retaliatory "black-listing" behaviors, but they express disagreement. This is despite knowing that another Public Lawsuit and additional scrutiny of their compliance with the law would hurt their Fund, Shareholders and LPs. This is Breach of Fiduciary Duty by a General Counsel, who is obligated to look out for the best interests of their Limited Partners and Shareholders and mitigate potential monetary and legal risks.

39. In a further conspiracy to witness tamper, the KKR Defendants went so far as communicate with a Private Equity Senior Executive who directly text messaged FERNANDEZ leading him to make statements saying “F Rats and Snitches” to help indemnify KKR and additionally insinuating guilt on their behalf. They falsely insinuated they would pay FERNANDEZ leading him to make these statements. The Senior Private Equity Executive texted him and suggested KKR would pay FERNANDEZ, directly texting him “how much do you want?” that lead him to make these statements. This was nothing more than a ruse. They tried to pay him “hush-money” to prevent his Testimony in Federal Court

.

**COUNT 1**

CONSPIRACY TO VIOLATE FEDERAL CIVIL RICO ACT - 18 U.S.C. § 1962(c)

40. Plaintiff incorporates paragraphs 24 – 25, 27 – 33 and 39 as if fully set forth herein.

41. The KKR DEFENDANTS are operating in a highly-coordinated manner violating numerous racketeering predicates, securities laws, labor laws and obstruction of justice laws.

42. FERNANDEZ filed an EEOC Complaint in 2024 leading to a federal investigation. Fernandez filed a Criminal Complaint in 2024 leading to a federal investigation. This makes him a Witness and an active participant in a “federal judicial or agency investigative process.”

43. The 3 predicate offenses in this Federal Civil RICO Conspiracy are:

(1) Witness Retaliation in violation of 18 US Code § 1513(e) (and NY Labor Law - LAB § 704 and NY Human Rights Law § 296.13) for effectively “black-listing” FERNANDEZ, including near-term tampering (June 2025) with his gainful employment,

effectively forcing him into unemployment in direct retaliation for him filing a Discrimination Complaint and initiating a federal criminal investigation.

(2) Witness Tampering in violation of 18 US Code § 1512 for corruptly influencing Fernandez (most recently in July 2025), internal employees and the external anonymous firms involved to cover this up, altering their future testimony in Federal Court. The Defendants may attempt to lie knowing that the Racial Disparagements and Defamation were "unrecorded," despite a Formal Apology being issued by the Global Head of HR after a lengthy investigation.

(3) Wire Fraud in violation of 18 US Code § 1343 for falsely certifying FERNANDEZ as an "Accredited Investor," when he definitely was not (which will be proven) while intentionally not verifying his paperwork, and then soliciting an interstate $190,000 + wire investment through email correspondence, while currently refusing to return his money, violating his "recission rights," or answer any questions related to the valuation of his investment. The ultimate investment materially underperformed a liquid S&P 500 index fund causing him calculated relative losses, estimated to be ~$400,000 in losses. The last wire solicitation was on April 3, 2020, well within the 10 year RICO look-back period.

(i) Furthermore, the federal wire fraud statute does not require the Plaintiff to prove that a defendant caused or attempted to cause economic loss to the victim. This means that a firm can be liable for fraud even if they did not intend to cause economic harm. The Supreme Court's May 22, 2025 ruling in *Kousisis v. United States* expanded the scope of federal wire fraud to include convictions based on fraudulent inducement, even without economic harm. The ruling upheld convictions of two government contractors who obtained investments by misrepresenting that they would comply with federal agency requirements.

44. According to *United States v. Delgado*, 972 F.3d 63, 79 (2d Cir. 2020), the RICO conspiracy provision focuses on the "act of agreement." Therefore, a defendant who conspires to commit a substantive offense under section 1962(c) can be convicted of a RICO conspiracy, even without personally committing or agreeing to commit a racketeering activity, as would be required for conviction of an underlying substantive offense. Nor does a RICO conspiracy require proof that an enterprise actually existed or that a pattern of racketeering activity actually occurred. Rather, it requires only that the conspirator "intend to further an endeavor which, if completed, would satisfy all of the elements" of a substantive offense.

**COUNT 2**

RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

45. Plaintiff incorporates paragraphs 19 - 23 and 27 – 33 as if fully set forth herein.

46. After an initial investigation, the EEOC has issued a "Notice of Right to Sue" (*Exhibit 2*), a prerequisite to file a Federal Claim under Title VII.

47. The KKR DEFENDANTS illegally discriminated against FERNANDEZ during his employment saying he was "sweating like a Mexican," a "Dirty, Illegal Cuban from Miami" and repeatedly called him ethnic sounding names like "Vincenzo" and "Vinny" creating a Hostile Work Environment that led to a Formal Complaint / HR investigation that resulted in a Formal Apology. FERNANDEZ was the only Hispanic in the Capital Markets Group at the time.

48. The KKR DEFENDANTS also illegally smeared FERNANDEZ as an "Illegal Steroid Abuser," DESPITE HAVING NO LEGAL EVIDENCE WHATSOEVER, in direct Retaliation for him submitting the Discrimination Complaint, because they were jealous.

49. They are currently violating the Anti-Retaliation provisions of Title VII by "black-listing" him in direct retaliation for complaining about discrimination, including tampering with a recent employer of his in June 2025, effectively preventing him from securing gainful employment, despite his educational achievements and accomplishments.

50. These discriminatory and retaliatory statements were uttered with malice and their current actions are embedded with Retaliatory Intent, which is protected by the U.S. Supreme Court and subject to numerous legal case precedent.

51. It is well-settled that Title VI and VII supports retaliation claims. See, e.g., *Peters v. Jenney*, 327 F.3d 307, 318 (4th Cir. 2003); *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 83 (D.D.C. 2003); *Gutierrez v. Wash. Dep't of Soc. & Health Servs.*, CV-04-3004-RHW, 2005 WL 2346956, at *5 (E.D. Wash. Sept. 26, 2005).

52. The Supreme Court has defined retaliation as an intentional act in response to a protected action. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005). The protected action in this Suit is the filing of a Formal Discrimination Complaint by FERNANDEZ. Citing Jackson, the court in Gutierrez underscored the intentional nature of a retaliation complaint: "Retaliation is, by definition, an intentional act. It is a form of "discrimination" because the complainant is being subjected to differential treatment." *Gutierrez*, 2005 WL 2346956, at *5. The complained of matter need not be a complaint; it can be any lawful conduct that an individual engages in connected with a protected right. "The very concept of retaliation is that the retaliating party takes action against the party retaliated against after, and because of, some action of the latter." *Fed. Mar. Bd. v. Isbrandtsen Co.*, 356 U.S. 481, 514 (1958). It carries with it the notion of "getting even." See id. As noted in a 2011 law review article:

> "Retaliation is a deliberate action used to send a clear message that complaining is unwelcome and risky. It is employed to instill fear in others who might consider making a complaint in the future. Those with cause for complaining are frequently among the most vulnerable in an institution. Once they complain, they are labeled "troublemakers." Retaliation, and the fear of retaliation, becomes a potent weapon used to maintain the power structure within the institution."

53. A statute that prohibits intentional discrimination implicitly prohibits acts of retaliation for complaints about or opposition to discrimination. See *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969) (a prohibition on racial discrimination includes an implicit prohibition on retaliation against those who oppose the discrimination); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 451 (2008) (a race discrimination statute encompasses retaliation actions as Congress and long line of precedent intended); *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008) (ADEA federal-sector provision that prohibits age discrimination implicitly covers claims of retaliation for filing an age discrimination complaint); *Peters*, 327 F.3d at 318-19 (prohibition against retaliation is implicit in the text of Section 601 of Title VII).

54. Furthermore, in *Robinson vs. Shell Oil Co*, the Supreme Court interpreted the term "employee" in the anti-retaliation provisions of Title VII to include "former employees."

55. See, e.g., *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997) (finding that a negative job reference given in retaliation for filing an EEOC complaint violated Title VII despite no effect on the prospective employer's hiring decision); *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031–35 (10th Cir. 2004) (finding an employee's retaliation claim against employer for

giving negative references to be actionable, even if an employee could not prove but-for causation).

**COUNT 3**

BREACH OF FIDUCIARY DUTY

56. Plaintiff incorporates paragraphs 38 as if fully set forth herein.

57. FERNANDEZ has tried on multiple occasions to mediate this matter pre-litigation to avoid hurting KKR and its LPs and Shareholders to Defendant KATIE SUDOL, General Counsel. He has given her adequate chances to cure their legal deficiencies and stop breaking relevant legislation including obstruction of justice, securities and labor law. This is despite knowing that another Public Lawsuit and additional scrutiny of their compliance with the law would hurt their Fund, Shareholders and LPs. This is Breach of Fiduciary Duty by a General Counsel, who is obligated to act in the best interest of their Limited Partners, cure any non-compliance with the law and mitigate potential damages to Shareholders.

**COUNT 4**

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58. Plaintiff incorporates all paragraphs as if fully set forth herein.

59. The KKR Defendants intentionally inflicted emotional distress on FERNANDEZ to retaliate against him for exposing their activities.

**COUNT 5**

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

60. Plaintiff incorporates all paragraphs as if fully set forth herein.

61. The KKR Defendants negligently inflicted emotional distress on FERNANDEZ to retaliate against him for exposing their activities.

**WHEREFORE,** FERNANDEZ prays for judgement against the KKR DEFENDANTS as follows:

i. Awarding FERNANDEZ all compensatory, treble and punitive damages including consequential and incidental damages as a result of the KKR DEFENDANTS wrongdoing in an amount to be determined at Trial.

ii. Awarding FERNANDEZ attorney's fees and costs (if applicable).

iii. Granting preliminary and permanent injunctive relief to prevent the KKR DEFENDANTS from further disparaging him.

iv. Such further relief this court deems just and proper.

**PRAYER FOR JURY TRIAL**

FERNANDEZ prays for a Jury Trial on all issues so triable.

DATE: March 18th, 2026

**RESPECTFULLY SUBMITTED**



Keith Fernandez, Plaintiff

# Exhibit 1 – NY Anti-Blacklisting Statute

**What does Boycott or Blacklist mean under the Human Rights Law?**

The boycott or blacklisting provisions of the Human Rights Law make it unlawful to "boycott or blacklist, or to refuse to buy from, sell to or trade with, or otherwise discriminate against any person," because that person, or of that person's "partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers or customers" have any of the protected characteristics listed below. (Human Rights Law § 296.13)

Examples might include:

- refusal to deliver to, or to refusal to provide services to, a particular neighborhood because of racial or ethnic composition;
- refusal of a publication to accept advertising from businesses that are owned by persons of a particular race, ethnicity, sexual orientation, etc.;
- refusal by a business to utilize the cleaning or other services of a company because its staff includes racial minorities;
- any business tactic driven by discriminatory motive towards persons or groups of persons because of they have one or more of the protected characteristics listed below.

| The Division of Human Rights investigates complaints of boycotting or blacklisting based on: |
|---|
| **Creed / Religion** (religious belief, practice, or observance; or because you do not have a religious belief) |
| **Disability** (a physical or mental condition) |
| **Familial Status** (if you are pregnant, have a child, or are in the process of obtaining custody of a child, or have a child or children under age 18 in your household) |
| **Gender Identity or Expression** (actual or perceived gender-related identity, appearance, behavior, expression, or other gender-related characteristic regardless of the sex assigned to that person at birth, including, but not limited to, the status of being transgender) |
| **Military Status** (including military reserves, or being a veteran) |
| **National Origin** (the country where you or your ancestors were born) |
| **Race/Color** (because you are Asian, Black, White, mixed race, etc.; includes ethnicity; includes traits historically associated with race such as hair texture or hairstyle) |
| **Sex** (because of your gender, includes sexual stereotyping, pregnancy) |
| **Sexual Orientation** (heterosexual, homosexual, bisexual, asexual, whether actual or perceived) |
| **Relationship or Association** (with a member or members of a protected category(ies) listed above) |
| The Division investigates boycott or blacklisting complaints only if the discrimination is based on one or more of the above reasons. The Division cannot investigate boycott or blacklisting that does not involve one of these reasons. If you do not see anything in this list that applies to your situation, please contact the Division of Human Rights to speak to a staff member. |

**Exhibit 2 – EEOC Notice of Right To Sue Lett**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Miami District Office**
100 SE 2nd St, Suite 1500
Miami, FL 33131
(800) 669-4000
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST) AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/08/2025

**To:** Keith Fernandez
600 NE 27th Street, Apt 2104
MIAMI, FL 33137

Charge No: 510-2024-11237

EEOC Representative and email: ANTONIO CASTILLO
INVESTIGATOR
ANTONIO.CASTILLO@EEOC.GOV

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST) OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 510-2024-11237

On behalf of the Commission,

Digitally Signed By:Evangeline Hawthorne
07/08/2025

Evangeline Hawthorne
Director

**Cc:**
Katie Sudol
35 NE 40th St. Suite 200
MIAMI, FL 33137

NA NA
35 NE 40th St. Suite 200
MIAMI, FL 33137

Please retain this Notice for your records.

## INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court* ***under Federal law****. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 510-2024-11237 to the District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500, Miami, FL 33131.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 510-2024-11237 to the District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500, Miami, FL 33131.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

# <u>Exhibit 3 – Forensic Competency Report</u>